UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

No. 04-11745-GAO

---

NOREEN E. NASH

Appellant,

v.

CONNECTICUT STUDENT LOAN FOUNDATION,
NEW HAMPSHIRE HIGHER EDUCATION
ASSISTANCE FOUNDATION
and
UNITED STATES DEPARTMENT OF
EDUCATION

Appellees.

---

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS DATED JUNE 11, 2004

---

BRIEF FOR APPELLEE
NEW HAMPSHIRE HIGHER EDUCATION
ASSISTANCE FOUNDATION

---

Mark F. Weaver
Ford & Weaver, P.A.
10 Pleasant Street
Portsmouth, NH 03801
(603) 433-2002



# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    Scope of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.    The debtor has failed to meet her burden of proving undue hardship . . . . . . . . . 4

    2.    Both the *Brunner* and the "totality of circumstances" test share important common elements including the requirement of establishing an inability to be employed in the future at a salary which would allow the loans to be repaid. . . . . 4

    3.    The Court's finding that Debtor failed to show good faith, though not necessary to affirm the decision below, was justified . . . . . . . . . . . . . 11

VI.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# Table of Authorities

**Statutes**

11 U.S.C. § 523(a)8 .................................................................. 1, 3, 4

**Cases**

*Alderette v. ECME*, 308 B.R. 495 (B.A.P. 10th Cir. 2004) .............................. 10

*Anelli v. Sallie Mae Serv. Corp. (In re Anelli)*, 262 B.R. 1 (Bankr. D. Mass. 2000) ....... 5, 7, 8

*Brunner v. New York Higher Ed.*, 831 F.2d 395 (2nd Cir. 1987) .......................... 4

*Burkhead v. U.S. (In re Burkhead)*, 304 B.R. 560 (Bankr. D. Mass. 2004) ................. 5

*Educational Credit Management Corp. v. Kelly (In re Kelly)*, 2004 Bankr. Lexis 965
(B.A.P. 1st Cir., July 21, 2004) ....................................................... 3

*Gotay v. E.C.M.C.*, 258 B.R. 531, 533 (Bankr. D. Mass. 2001) ..................... 6, 10, 12

*In re Pena*, 155 F.3d 1108 (9th Cir. 1998) ...................................... 7, 8, 10

*Kopf v. U.S. Dept. of Ed.*, 245 B.R. 731 (Bankr. Me. 2000) .................... 4, 5, 6, 7, 9

*Kelsey v. Great Lakes Higher Ed. Corp., et al*, 287 B.R. 132
(Bankr. Vt. 2001) ................................................................ 4, 7, 11

I. <u>STATEMENT OF FACTS</u>

This matter involves an adversary action filed by the Debtor, Noreen Nash, seeking the discharge of her student loan obligations pursuant to 11 U.S.C. § 523(a)8, claiming that the repayment of the loans will result in an undue hardship on the Debtor. The Bankruptcy schedules, exhibits and transcript of the trial in this matter all speak for themselves. In essence, the Debtor was a highly successful student, and worked as an editorial assistant, communications /public information officer, and investment banker. The Debtor claims that things changed in the middle of her law school education, when she claims to have started to suffer from a psychiatric disorder. She claims her condition deteriorated to where she was living in her car with her two dogs, and had a very limited ability to work.

Although Ms. Nash comes to this Court with claims of an inability to work, and of no ability to repay her student loans, she also comes before this Court with savings of approximately $11,000.00 received through a social security disability claim (*App.* at 38), as well as a history of gambling, (sometimes successfully, and other times not). She even won two boats, valued at $24,500.00, just prior to leaving Las Vegas in mid-2000 (*App.* at 168). She claims to be unable to apply to the Department of Education for a discharge of her loans due to her disability because she cannot certify that she is unable to work. (*App.* at 166). She further claims to not want to seek to consolidate her loans under the William D. Ford income contingent repayment program because she expects it will result in the ultimate forgiveness of the loans, and be treated as

taxable income to her. (*App.* at 226). Most importantly, although Ms. Nash presents a current situation of economic difficulty, she has failed to provide any evidence that her medical condition that reportedly keeps her from regular employment will continue indefinitely. Indeed, she failed to have admitted any expert testimony or evidence that would support such a finding.

The debt owed to the defendant New Hampshire Higher Education Assistance Foundation is very small, approximately $2,000.00 (*App.* at 107). During the trial, the debtor claimed to be unable to pay even $25.00 per month toward this debt, or to use the $11,000.00 in funds she is holding to pay it off. (*App.* at 202-03). Given the findings of the Bankruptcy Court that none of the Debtor's student loans are dischargeable, the Court did not rule on whether a partial discharge may apply in this case.[1]

## II. STATEMENT OF ISSUES

1. Whether the Bankruptcy Court's findings of fact were clearly.

2. Whether the Bankruptcy Court applied the correct legal standard to the Debtor's claims, such that its findings that she had failed to meet her burden of showing that her condition would continue into the foreseeable future and prevent her from repaying her loans, and that she had not made a good faith effort to repay her student loans must be upheld.

---

[1] If this Court overturns any part of the District Court's opinion, the defendant New Hampshire Higher Education Assistance Foundation respectfully requests that this matter be remanded for a determination of whether a partial discharge of the student loans may be used in this case to allow for the payment of the small amount due on the New Hampshire loans, which under almost any set of circumstances should not create an undue hardship for the Debtor.

### III. SUMMARY OF ARGUMENT

The decision below must stand for the simple reason that Debtor has failed to meet her burden of proof in showing undue hardship. Whether this Court employs the *Brunner* test or the "totality of circumstances" test, the Debtor must show that a medical condition which she says will prevent her from being able to earn enough to repay her loans will continue into the foreseeable future. Debtor not only failed to prove that, she failed to present any admissible evidence on the point. This fundamental flaw in Debtor's case renders many of the other issues raised by Debtor (such as the propriety of the Court's ruling that she did not make a good faith attempt to repay the loans) moot. Nonetheless that finding is also supported by the record.

### IV. SCOPE OF REVIEW

Although the First Circuit has yet to adopt a specific standard of review for § 523(a)(8) determinations, the Bankruptcy Appellate Panel for this circuit has, holding that a bankruptcy court's findings of fact are reviewed pursuant to the "clearly erroneous" standard of review, while its conclusions of law are reviewed de novo. *Educational Credit Management Corp. v Kelly (In re Kelly)*, 2004 Bankr.LEXIS 965 (B.A.P. 1st Cir., July 21, 2004) citing *Grella v Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir. 1994).

## V. ARGUMENT

### 1. The debtor has failed to meet her burden of proving undue hardship.

Courts universally hold that the debtor has the burden of proving an undue hardship that would justify discharging educational loans under 11 U.S.C. § 523 (a)(8). This is true under both the *Brunner* test and the "totality of circumstances" test advocated by the Debtor. *See, Kopf v. U.S. Dept. of Ed. (In re Kopf)*, 245 B.R. 731, 734 (Bankr. Me. 2000) (totality of circumstances); and *Kelsey v. Great Lakes Higher Ed. Corp., et al (In re Kelsey)*, 287 B.R. 132, 143 (Bankr. Vt. 2001)( Brunner). Thus, the Debtor must present evidence to prove all elements necessary to show that she is entitled to a discharge. As will be shown below, it requires more than a showing that the Debtor had a debilitating medical condition in the past and on the date of the hardship hearing. Yet that is all that the Debtor established in this case, having offered no evidence that her condition will continue indefinitely into the future.

### 2. Both the *Brunner* and the "totality of circumstances" test share important common elements including the requirement of establishing an inability to be employed in the future at a salary which would allow the loans to be repaid.

Debtor complains that although the trial Court claimed it was utilizing the totality of circumstances test, it in fact applied the test of *Brunner v. New York Higher Ed.*, 831 F.2d 395 (2nd Cir. 1987), a standard Debtor contends is more difficult to meet. This argument fails to advance the Debtor's case for two reasons. First, the trial Court was free to apply the *Brunner* test if it so chose as the First Circuit Court of Appeals has not ruled otherwise. Second, there is no bright line distinction between the two standards. In fact, there is a liberal amount of cross

4

pollenization between them. The trial Court noted this on page 15 of its opinion at some length, quoting the decisions in *Burkhead v. U.S. (In re Burkhead)*, 304 B.R. 560 (Bankr. D. Mass. 2004) and *Anelli v. Sallie Mae Serv. Corp. (In re Anelli)*, 262 B.R. 1 (Bankr. D. Mass. 2000), as follows:

> [T]he Court finds it unnecessary to belabor the merits of each test. Neither the plain language of § 523 (a)(8) nor the First Circuit mandate one particular test. Moreover, this Court observes that while Courts purport to apply different tests they essentially look to the same factors. Therefore, without accepting one test at the exclusion of the others, the Court adopts the totality of the circumstances approach and will consider several factors placing no undue emphasis on any one of them in determining "undue hardship". Although not an exclusive list, the Court considers relevant, but not necessarily dispositive of the issue, the following:
>
> (1) whether the Debtor could meet necessary living expenses for herself if forced to repay the loans;
> (2) whether the Debtor has made good faith efforts to repay the loan;
> (3) whether the Debtor filed for bankruptcy for the sole reason of discharging student loan debt;
> (4) whether additional facts and circumstances such as a medical condition, employability and the like weigh in favor of a hardship discharge.

*See* Addendum 1 to Brief for Appellant, at 15.

In *Kopf v. U.S. Dept. of Ed., supra*, which Debtor cites with approval, the Court also recognized the loose borders between the two standards stating: "'the totality of the circumstances' approach to undue hardship resonates in significant ways with...the first two prongs of the *In re Brunner* test, examining the Debtor's income history, prospects for earned and unearned income, and expenses with an eye to determining whether the Debtor can maintain a household while paying the student loan obligation." *Kopf, supra*, at 740. Importantly, the *Kopf* court noted that undue hardship requires a "forward looking" approach. *Id.*, at 744.

5

To establish undue hardship under the totality of circumstances test, the Massachusetts Bankruptcy Court has held that the Debtor must "prove that (1) her past, present and reasonably reliable future financial resources; (2) her and her dependant's reasonably necessary living expenses, and; (3) other relevant facts or circumstances unique to the case prevent her from paying the student loans while still maintaining a minimal standard of living even when aided by a discharge of other pre-petition debts. *Gotay v. E.C.M.C. (In re Gotay)*, 258 B.R. 531, 533 (Bankr. D. Mass. 2001).[2]

Common sense, and the clear language of the *Gotay* decision, compel the conclusion that Parts 1 and 3 of the *Gotay* test, and prong 1 and 4 of Judge Feeney's formulation, require a showing of what the Debtor's circumstances are likely to be in the future. Therefore, proof that the Debtor's claimed disability (medical, vocational or other) will persist into the foreseeable future is indispensable under either test. This approach is also found in the *Kopf* decision where the court refused to discharge the debtor's student loans because her case suffered from the very deficiency that hinders Ms. Nash's case, *i.e.* a failure to provide evidence that the debtor's claimed medical condition will persist into the future. The Court found that the debtor in *Kopf* proffered "nothing to indicate whether any condition or circumstance (medical, family, social, emotional) impedes her employment prospects." The decision continued, "(s)imply put, Kopf's proof is geared to the here-and-now." *Kopf, supra*, at 746.

Since it is clear that the Debtor's future prospects (i.e. future employability) must be established, the question is what evidence must a debtor present when the current impediment to

---

[2] The totality of circumstances test which Judge Feeney utilized was comprised of slightly different elements. This is obvious as she set out a four prong, rather than a three prong, test. As noted above, she was free to do so as the First Circuit has not ruled otherwise.

6

gainful employment is said to be a medical condition? More to the point, is the Debtor required to present expert medical testimony that the condition will persist? Judge Feeney found as much. *See* Addendum 1 to Brief for Appellant, at 16. In doing so, Judge Feeney cited another case from this Circuit, *In re Kelsey, supra*, stating:

> Courts evaluating the dischargeability of educational loans should closely scrutinize claims for undue hardship based upon psychological and emotional disability because of the 'susceptibility of such claims to fabrication, exaggeration and fraud.' *Kelsey v. Great Lakes Higher Education Corporation, et al. (In re Kelsey)*, 287 B.R. 132, 143 (Bankr.D.Vt. 2001)(Debtor claimed her mental condition, bipolar disorder, constituted undue hardship). Emphasizing the need for corroborating evidence, the bankruptcy Court stated:
>
>> Well qualified substantiated expert testimony is essential. The demeanor and credibility of witnesses in testifying regarding the pertinent facts are also paramount considerations in resolving the plethora of factual disputes encountered in student loan discharge cases involving claims of psychological or emotional illness.

Addendum 1 to Brief for Appellant, at 16.

It is clear that there must be expert medical testimony regarding a prognosis to establish that the Debtor cannot work in the future. Contrary to this law, Debtor suggests that expert testimony is not required. She cites the *Pena*[3] and *Anelli*[4] cases (Brief for Appellant, at 17) to the effect that a Debtor can prevail in a medically based "hardship" claim without presenting expert testimony. This characterization is inaccurate. While neither the *Pena* nor *Anelli* Court

---

[3] *In re Pena*, 155 F.3d 1108 (9th Cir. 1998).

[4] *Annelli v. Sallie Mae*, 262 B.R. 1 (Bankr. D. Mass. 2000).

had an expert testify before it, Debtor fails to mention that evidence on prognosis was presented in these cases, though in a somewhat unconventional manner. In each case, the Court allowed into evidence hearsay statements of opinion on permanency by debtor's doctor because counsel for the lenders failed to object to its admission. See *Pena, supra*, at 1113 and *Anneli, supra*, at 8. Thus, there was prognosis evidence in the record in those cases. In this case, however, there was none. Indeed, counsel for Appellee NHHEAF successfully objected to the admission of hearsay evidence of prognosis without a live witness. *See* Trial transcript at Page 138, Tab #21 Appendix to Brief for Appellant.

Debtor tries to come within the ambit of *Pena* or *Annelli* by suggesting that there were medical records before the Court to establish that Mrs. Nash's problems are permanent or at least that the problems will extend into the indefinite future.[5] However the proffered records or testimony show no such thing .

At page 6 of her brief, Debtor suggests that she presented evidence that she will not be able to work into the "foreseeable future." Debtor points to two "Temporary Total Disability" forms admitted by agreement, which supposedly indicate that her condition will continue indefinitely. These forms appear at the Appendix to the Brief for Appellant, 33-35 (tabs 6-7). A cursory review of tabs 6-7 reveals that the forms say no such thing. On their face, the forms relate to a "temporary disability" and were filled out in 2002. The Debtor affirms, about halfway

---

[5] Because no evidence whatsoever of Debtor's prognosis was entered into evidence, Debtor's complaint that the Court unfairly made her prove that her disability was "permanent" rather than requiring only proof that her disability will last into the foreseeable future rings hollow. She can not meet either test. Thus, even if the Court was in error when it spoke in terms of "indefinitely" or "permanent", the error was harmless as Debtor, as a matter of law, could not have met the lesser standard she advocates.

8

down the form, that "this disability is temporary", and the doctor's certification on the bottom says that Debtor "is unable to work". There is no opinion or indication on these forms that the Debtor's condition will continue indefinitely into the future. As the *Kopf* Court might say, the forms are "geared to the here and now", and are meant to prove that the condition is temporary.

Also at page 6 of her brief, Appellant cites and badly mischaracterizes the testimony at pages 115, 138-141 of the trial transcript (tab 21 of her Appendix to Brief). At best, those pages contain Debtor's thoughts as to how long she will be taking medicine. Debtor also refers to medical records which were before the Court and which appear at Appendix pp. 25-32 (tab 5). Those pages consist of several partially handwritten status reports and one typewritten report dated April 17, 2003. Relying on these records presents two problems for Debtor. First, the Court ruled that the handwritten reports are illegible and of no evidentiary value. See, Order in Addendum 1 Brief for Appellant, at, 17. Second, and more importantly, the Court expressly ruled that the last two paragraphs of the typewritten report on page 32 were not admissible. Id., at 2, fn. 2 and 9, fn. 4. That is the only part of the medical records which suggests Debtor will not be able to work "for the foreseeable future". Incredibly, counsel for Debtor presents the full report –without redaction of the inadmissible material—and cites it as proof that there was medical evidence before the Court corroborating her inability to work into "the foreseeable future".[6]

---

[6] In a like manner, Debtor's counsel has also included as Addendum 2 to the Debtor's brief a Social Security document entitled "A Guide For Representative Payees" that was not an exhibit at trial. The defendant objects to the consideration of any documents that were not before the trial court as they cannot be a part of the record in this matter.

9

In fact, contrary to Debtor's claims on page 6 of the Brief, nowhere in the cited (and admissible) pages does any doctor go on record as saying Debtor's medication or treatment will go on "indefinitely". Nor does any doctor say that she cannot work for any duration, much less into "the foreseeable future". Moreover, the Debtor does not appeal the Court's evidentiary ruling that the medical opinions were not admissible.

Debtor implicitly acknowledges she must put on expert evidence regarding future medical prospects by submitting these records and trying to shoehorn them into *Pena* and *Annelli*. But unlike those cases, no evidence whatsoever of Debtor's post trial prognosis was admitted in this case.

In the context of a medical hardship case the expert prognosis is indispensable. In this respect, the case at bar differs from *Gotay* and *Alderette*[7] which are relied upon by the Debtor. In those cases, making a determination of the debtor's future prospects took no special expertise. The Debtors were uneducated and/or had no marketable skills. The debtors also had to care for minor children and were living "hand to mouth". That the debtor's difficult situation would persist for many years — and at least until the children were emancipated – was a logical, non-medical, and common sense conclusion.

The case of *In Re Kelsey, supra,* provides a primer as to how a Debtor should put on her proofs in a "medical hardship" case. The facts in *Kelsey* were similar to this case. Ms. Kelsey was a single woman who had a law degree but allegedly could not put it to use due to bipolar disorder. In *Kelsey*, the debtor prevailed even under the allegedly more difficult *Brunner* test

---

[7] *Alderette v. ECME*, 308 B.R. 495 (B.A.P. 10th Cir. 2004).

10

because she put on convincing medical testimony about her current condition and the likelihood that it would remain permanent. This is how she met her burden:

> During the course of the two-day trial various witnesses were presented. The debtor's treating psychiatrist, Dr. Christine Barney, testified at great length and with competency, clarity and objectivity as to the debtor's past, present and reasonably anticipated future mental and emotional condition, and prognosis. . . . Furthermore, Dr. Barney testified that the debtor's condition is worsening and incurable. She stated that the debtor's depression is a biologic illness and that the debtor's ailment is neither voluntary, wilful nor contrived. Dr. Barney stated unequivocally at trial that the debtor will suffer from this serious depressive condition until death; that she has been symptomatic and depressed for over 20 years; that the disease is progressive and insidious; that it will render her unemployable for not less than two years; that it would take 3 -- 5 years of optimal treatment to show any real improvement; and that the debtor would need ten years of uncontaminated employment success in order to sustain the level of pressure necessary to retain a typical $40,000 per year job.

*Id.*, at 136.

In Ms. Nash's case, however, no such testimony was offered. Indeed, the prognosis for Ms. Nash is left to conjecture and speculation.

### 3. The Court's finding that Debtor failed to show good faith, though not necessary to affirm the decision below, was justified.

The Court found that Debtor did not make a good faith effort to repay her student loans. Although this is an express requirement under the *Brunner* test, it is also amenable to inclusion in the totality of circumstances test advocated by the debtor and set out in *Gotay* under prong 3 as "other relevant facts or circumstances". Judge Feeney expressly adopted it as part of her totality of circumstances test. Whether the Debtor had funds available to her, but chose to use them for gambling or savings rather than repayment of her student loans, is relevant. Debtor complains that her failure to participate in the William D. Ford consolidation program is not conclusive

11

evidence of a lack of good faith. Debtor also takes the Court's disapproval of Ms. Nash devoting the money she did to gambling rather than using it to pay her loans as improperly imposing a "morality" test on the Debtor. Finally, Debtor's counsel says that there was no obligation for her to use her social security proceeds to pay down her student loans because such funds are exempt from claims of creditors or attachment.

What Debtor fails to recognize is that although each enumerated act, standing alone, might not justify a finding of a lack of good faith, taken together they form a compelling mosaic of behavior which does not reflect well on Debtor's intentions. For example, the Debtor's failure to participate in the William D. Ford loan consolidation program, which would make her loan payments income contingent, could be read as betraying more concern for her tax situation than the repayment of debt as the Debtor testified that participating in the program could ultimately result in the forgiveness of her student loans, which may be treated as taxable income to her in the future.[8] Occasionally gambling may not be immoral or may not equate with a lack of good faith, but keeping a $24,500.00 gambling windfall[9] to herself and not devoting one penny to loan repayment raises legitimate questions as to whether the Debtor comes to the Court with clean hands. Likewise, while the proceeds of her lump sum social security award ($11,000.00) may be exempt from creditors' claims, it does not mean that she could not have used it to repay some of her student loans if she wished. The Court is entitled to take notice of that choice as a part of the totality of circumstances it must assess in coming to a decision. Surely if she had made a different decision and used the proceeds of her gambling and disability windfalls to pay down her

---

[8] See Appendix to Brief for Appellant-Debtor, at 226.

[9] See Addendum 1 to Brief for Appellant, at 8.

12

student loans, the Court could take that as a sign of good faith. No doubt her counsel would bring it to the attention of the Court for that very purpose. So clearly the opposite is also true. Finally, whether or not one takes measures to improve her situation, such as participating in vocational rehabilitation, is also a "circumstance" which can inform the Court's decision.

## VI. CONCLUSION

The Debtor is indebted to the New Hampshire Higher Education Assistance Foundation for slightly more than $2,000.00. She has failed to show that she cannot repay this small amount, and she has failed to show that she cannot obtain work in the future that will allow her to make reasonable payments toward her student loans. As the Bankrutcy Court noted, the Debtor has not met her burden of establishing a good faith effort to repay her loans when the opportunity existed, and has failed to provide any expert testimony that shows that she will be unable to work in the foreseeable future. Given this, the decision of the Bankruptcy Court should be affirmed.

Respectfully submitted,

New Hampshire Higher Education
Assistance Foundation

By its Attorneys,

Dated: October 19, 2004

/s/ Mark F. Weaver

Mark F. Weaver, Esq.
Edmond J. Ford, Esq. (BBO #646710)
Ford & Weaver, P.A.
10 Pleasant Street, Suite 400
Portsmouth, NH 03801
603-433-2002

## CERTIFICATE OF SERVICE

I, Mark F. Weaver, certify that on October 19, 2004, I forwarded a copy of the foregoing to the following:

Eugenia M. Carriss, Esq.
Assistant U.S. Attorney
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

Joseph S.U. Bodoff, Esq.
Richard P. O'Neil, Esq.
Bodoff & Slavitt, LLP
225 Friend Street, 7th Floor
Boston, MA 02114-1812

R. Richard Croce, Esq.
Connecticut Student Loan Foundation
525 Brook Street
P.O. Box 1009
Rocky Hill, CT 06067

                                                */s/ Mark F. Weaver*
                                                Mark F. Weaver, Esquire

