UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

No. 04-11745-GAO

---

NOREEN E. NASH

Appellant

v.

CONNECTICUT STUDENT LOAN FOUNDATION
NEW HAMPSHIRE HIGHER EDUCATION
ASSISTANCE FOUNDATION
and
UNITED STATES DEPARTMENT OF
EDUCATION

Appellees.

---

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS DATED JUNE 18, 2004

---

BRIEF FOR APPELLEE
UNITED STATES DEPARTMENT OF EDUCATION

---

Eugenia M. Carris
Assistant U.S. Attorney
U.S. Attorney's Office
Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3376

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.    THE TEST USED BY JUDGE FEENEY IN *NASH* TO DETERMINE UNDUE HARDSHIP WAS APPROPRIATE AND NOT ERROR . . . . . . . . . . . . . . . . . . . 6

        A.    In Light Of The Essential Similarities Between The Various Tests Used Within The First Circuit, Judge Feeney's Use Of Her Own *Anelli* Test Was Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    The Debtor Waived Her Right To Appeal The Test Used By The Bankruptcy Court In Determining Undue Hardship Pursuant To 11 U.S.C. § 523(a)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.   PLAINTIFF FAILED TO MEET HER BURDEN OF PROVING, BY A PREPONDERANCE OF THE EVIDENCE, THAT SHE IS ENTITLED TO A DISCHARGE OF HER STUDENT LOANS DUE TO UNDUE HARDSHIP . . 10

        A.    The Debtor Failed To Produce Any Medical Evidence Of A Long-Term Prognosis Indicating That She Could Not Work In The Foreseeable Future. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    The Debtor Failed To Establish That Repayment Of Student Loans Will Result In Her Inability To Maintain A Minimal Standard Of Living . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.    The Debtor Did Not Show That She Made A Good Faith Effort To Repay Her Student Loans. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

### CASES

In re Anelli,
    262 B.R. 1 (Bankr. D. Mass. 2000) ................................................................ 6, 7, 10, 11

In re Brightful,
    267 F.3d 324 (3d Cir. 2001) ................................................................................... 5

Brunner v. New York State Higher Educ. Serv. Corp.,
    831 F.2d 395 (2d Cir. 1987) ..................................................................... 5, 6, 7, 12

In re Faish,
    72 F.3d 298 (3d Cir. 1995) ................................................................................... 13

Fleet Mortg. Group Inc. v. Kaneb,
    196 F.3d 265 (1st Cir. 1999) .................................................................................. 9

In re Faktor,
    306 B.R. 256 (Bankr. N.D. Iowa 2004) ................................................................ 8

In re Garrett,
    180 B.R. 358 (Bankr. D.N.H. 1995) ................................................................... 10

In re Gerhardt,
    348 F.3d 89 (5th Cir. 2003) ................................................................................... 5

In re Gotay,
    258 B.R. 531 (Bankr. D. Mass. 2001) .................................................................. 8

In re Hornsby,
    144 F.3d 433 (6th Cir. 1998) ................................................................................. 5

In re Hoskins,
    292 B.R. 883 (Bankr. C.D. Ill. 2003) .................................................................. 11

In re Kelsey,
    287 B.R. 132 (Bankr. D. Vt. 2001) ..................................................................... 11

In re Long,
    322 F.3d 549 (8th Cir. 2003) ................................................................................. 5

In re Pena,
    155 F.3d 1108 (9th Cir. 1998) ............................................................................. 12

In re Rifino
    245 F.3d 1083 (9th Cir. 2001) ............................................................................... 5

In re Roberson,
     999 F.2d 1132 (7th Cir. 1993) ................................................................................. 5, 12,13

In re Savage,
     311 B.R. at 835 (B.A.P. 1st Cir. 2004) ............................................................................... 9

In re Swinney,
     266 B.R. 800 (Bankr. N.D. Ohio 2001) .......................................................................... 11

In re Williams,
     337 F.3d 504 (5th Cir. 2003) ............................................................................................. 5

In re Woodcock,
     45 F.3d 363 (10th Cir. 1995) ............................................................................................. 5


**STATUTES AND RULES**


11 U.S.C. § 523(a)(8) ................................................................................... 1, 2, 4, 5, 6,10

28 U.S.C. § 158(c)(1) ........................................................................................................ 1

Fed. R. Civ. P. 26(a)(2) ..................................................................................................... 2

Fed. R. Bankr. P. 7026 ...................................................................................................... 2

Fed. R. Bankr. P. 8001(e) ................................................................................................. 1

## STATEMENT OF JURISDICTION

The judgment of the United States Bankruptcy Court for the District of Massachusetts, denying Noreen Nash a discharge of her student loan debt, was entered on June 18, 2004. Plaintiff elected to appeal to the United States District Court for the District of Massachusetts on June 28, 2004. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(c)(1) and Rule 8001(e) of the Federal Rules of Bankruptcy Procedure.

## QUESTION PRESENTED

Was the Bankruptcy Court justified in denying plaintiff Noreen Nash's request to have her student loan debt discharged pursuant to 11 U.S.C. § 523(a)(8) of the Bankruptcy Code due to the debtor's failure to meet her burden of proof that she suffered from a hardship preventing her from obtaining employment?

## STATEMENT OF THE CASE

This Court is being asked to review the decision of the United States Bankruptcy Court for the District of Massachusetts denying discharge of plaintiff's student loans on the grounds that the debtor did not prove that repayment of these debts constituted an "undue hardship." June 18, 2004 Memorandum and Order (Feeney, J.) ("*Mem. of Decision*") at 20; Appendix to Brief for Appellant-Debtor ("App.") p. 257 (Tab 22)[1]. The Bankruptcy Court held that the debtor failed to establish both that her condition was likely to persist and that she could not meet a minimal economic standard of living. *Mem. of Decision* at 18-19; App. p. 255-56 (Tab 22). The Bankruptcy Court also held that the debtor did not make a good faith effort to pay back her student loans. *Mem. of Decision* at 20; App. p. 257 (Tab 22).

---

[1] To the extent possible, the government will refer to exhibits in the debtor's appendix filed with this Court.

## STATEMENT OF FACTS

On September 4, 2002, Noreen E. Nash ("the debtor" or "Nash") filed for bankruptcy under Chapter 7 of the Bankruptcy Code, seeking the discharge of debts in the amount of $285,000. All of Nash's debt was discharged, except for $140,000 owed in student loans. *Mem. of Decision* at 4-5; App. p. 241-42 (Tab 22). On November 20, 2002, the debtor filed a complaint pursuant to 11 U.S.C. § 523(a)(8) seeking discharge of the remaining $140,000 in student loans against the New Hampshire Higher Education Assistance Foundation ("NHHEAF"), Yale University ("Yale"), Marry Sue Coleman as President of the University of Michigan ("Michigan"), Connecticut Student Loan Foundation ("CSLF"), and the United States Department of Education ("DOE"). *Compl.* at 1; App. p. 1 (Tab 1). On February 21, 2003, and February 19, 2004, the Bankruptcy Court entered default judgements against Yale and Michigan for failure to defend. *Mem. of Decision* at 2; App. p. 239 (Tab 220). A trial took place on November 19, 2003, and January 23, 2004, with the remaining three defendants. *Mem. of Decision* at 2; App. p. 239 (Tab 22). On the first day of trial, ruling on a Motion in Limine, the Bankruptcy Court excluded the last two paragraphs of the debtor's medical documentation for noncompliance with Fed. R. Civ. P. 26(a)(2), made applicable by Fed. R. Bankr. P. 7026.[2] *Id*. As this was debtor's only evidence that she would be disabled for the foreseeable future and therefore unable to pay her student loans, judgment was entered for the defendants and the loans were not discharged.

---

[2] Nash does not challenge the Bankruptcy Court's ruling on the Motion in Limine; yet, astonishingly, she has included these portions of the excluded medical reports within the appendix that supplements her appellate brief, App. p. 32 ¶¶ 2 & 3 (Tab 5), and her brief cites to those materials. Brief For Appellant p. 6. The Court should disregard those materials and all argument based on them.

The evidence indicates that after graduating at the top of her high school class, Nash took out student loans to attend Dartmouth College. *Ct. Tr.* dated 11/19/03, at 19; App. p. 116 (Tab 21). She graduated from Dartmouth with honors and subsequently worked for a publishing house and an educational foundation in New York City. *Ct. Tr.* dated 11/19/03 at 20-21; App. p. 117-118 (Tab 21). Returning to school, she received the equivalent of a Masters in Business Administration from Yale University in 1992; while at Yale, Nash became interested in the study of law. *Ct. Tr.* dated 11/19/03 at 22; App. p. 119 (Tab 21). After working as an investment banker at a high salary for two years, she began attending law school at the University of Michigan in 1994. *Ct. Tr.* dated 11/19/03 at 24; App. p. 121-22 (Tab 21).

The debtor claims that shortly after entering law school she began having difficulties concentrating and finishing tasks. She sought professional help from a psychiatrist who prescribed Ritalin. *Ct.Tr.* dated 11/19/03 at *27;* App. p. 124 (Tab 21). The debtor testified that, after her second year of law school, she obtained a summer associate position at Fried, Frank, Harris, Shriver and Jacobson in Washington D.C. *Ct.Tr.* dated 11/19/03, at 28; App. p. 125-26 (Tab 21). While at Fried Frank, the debtor continued to have trouble concentrating and focusing on tasks, which adversely affected her work product and eliminated any chance of a job offer from the firm. *Ct.Tr.* date 11/19/03 at 29; App. p. 126 (Tab 21). The following semester, the debtor temporarily withdrew from law school and worked as a telemarketer for Kaplan Test Services. *Ct.Tr.* dated 11/19/03, at 31-32; App. p. 128-129 (Tab 21). The debtor graduated from law school in 1999, but has never practiced law. *Ct. Tr.* dated 11/19/03 at 20-21; App. p. 130-31 (Tab 21).

After receiving her law degree, Nash flew to Las Vegas and lived there until March of 2001. *Ct.Tr.* dated 11/19/03, at 35-36; App. p. 132-33 (Tab 21). Allegedly unable to find employment, Nash lived on her credit cards and video poker winnings. *Ct.Tr.* dated 11/19/03, at 35; App. p. 132 (Tab 21). While in Las Vegas she won two boats, resulting in a cash payment of $24,500. *Ct. Tr.* dated 1/23/04, at 12; App. p. 169 (Tab 21). The debtor did not use any portion of these winnings to minimize her student loan debt; rather, she used them to pay bills and buy a used car. *Id.*

After a year in Las Vegas, Nash moved back to Massachusetts. With Massachusetts Health benefits, she received psychiatric treatment from McLean Hospital. *Ct. Tr.* dated 1/23/04, at 25-26; App. p. 182-183 (Tab 21). From 2001 until the time of the trial, the debtor received psychiatric treatment from Dr. Elsa Ronningham. App. p. 32 (Tab 5). In October of 2001, the debtor's application for Social Security Disability Insurance ("SSDI") was accepted, and she began to receive benefits in February 2002; she also received retroactive benefits dating from December 1997 totaling $11,849.74. App. p. 33-34 (Tab 6-7).

At trial, Nash argued that her student loans constituted an "undue hardship" and she was therefore entitled to relief under 11 U.S.C. § 523(a)(8). *Mem. of Decision* at 2; App. p. 239 (Tab 22). On cross examination, Nash admitted she was eligible for vocational training through her SSDI, but had not taken advantage of any such program. *Mem. of Decision* at 10; App. p. 247 (Tab 22). The debtor also testified that she had not taken advantage of DOE's Direct Lending Program because she believed it would not be of any benefit. *Mem. of Decision* at 11; App. p. 248 (Tab 22). Nash further testified that she frequents the Mohegan Sun Casino to play video poker, and that she views these trips a form of therapy. *Id.*

The Bankruptcy Court held that Nash failed to prove that continuing payment of her student loans would constitute an undue hardship. *Mem. of Decision* at 22; App. p. 259 (Tab 22). Specifically, the court held that Nash failed to: present sufficient evidence that her bipolar disorder would continue to hinder her employment; prove that she will never have the ability repay her loans; and, show that she made a good faith attempt to repay her student loans. *Id.*[3]

## ARGUMENT

### I. STANDARD OF REVIEW

The Court should review the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. *In re Gerhardt*, 348 F. 3d 89, 91(5th Cir. 2003) (citing *In re Williams*, 337 F.3d 504,508 (5th Cir. 2003)). The First Circuit has yet to consider the appropriate review of a lower court's determination of "undue hardship" pursuant to 11 U.S.C.§ 523(a)(8). However, several other circuits have ruled that an "undue hardship" determination is subject to de novo review. *Id.* (citing *In re Long*, 322 F. 3d 549, 553 (8th Cir. 2003); *In re Rifino*, 245 F.3d 1083, 1086-87 (9th Cir. 2001); *In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001); *In re Hornsby*, 144 F. 3d 433, 436 (6th Cir. 1998); *In re Woodcock*, F.3d 363, 367 (10th Cir. 1995); *In re Roberson*, 999 F. 2d 1132, 1137 (7th Cir. 1993); *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).

---

[3] The debtor did not request a partial discharge. The court held that, in any event, partial discharge was inappropriate given the debtor's failure to meet her burden of proof. *Mem. of Decision* at 22; App. p. 259 (Tab 22).

II. **THE TEST USED BY JUDGE FEENEY IN *NASH* TO DETERMINE UNDUE HARDSHIP WAS APPROPRIATE AND NOT ERROR.**

    A.    <u>In Light Of The Essential Similarities Between The Various Tests Used Within The First Circuit, Judge Feeney's Use Of Her Own *Anelli* Test Was Appropriate.</u>

Courts have employed several tests to determine the "undue hardship" under section 523(a)(8). Regardless of the test applied by the Court, Nash's case fails because she did not present sufficient evidence to prove that her condition will prevent her from finding employment for the foreseeable future, and that she failed to make a good faith attempt to pay off her student loan debt.[4] However, Judge Feeney's use of her own test, as set forth in *In re Anelli*, 262 B.R. 1, 8 (Bankr. D. Mass. 2000) (hereafter "*Anelli* test"), was an appropriate way to analyze the issue. The *Anelli* test considers the following relevant, but not exclusive, factors:

    1) Whether the debtor could meet necessary living expenses for herself if forced to repay the loans;
    2) Whether the debtor has made good faith efforts to repay the loan;
    3) Whether the debtor filed for bankruptcy for the sole reason of discharging student loan debt;
    4) Whether additional facts and circumstances such as a medical condition, employability and the like weigh in favor of a hardship discharge.

*Anelli*, 262 B.R. at 8.

---

[4] Because the First Circuit has not adopted a particular test to be used in analyzing undue hardship, this Memorandum focuses on the appropriateness of the lower court's decision based on the existing state of the law; however, it is the government's view that the test outlined in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987), discussed *infra*, is the appropriate test.

Similar to the decision under review here, *Anelli* concluded that adopting a certain approach was not of great importance because various tests used in determining "undue hardship" look at the same factors. ("[T]his Court observes that while courts purport to apply different tests they essentially look to the same factors."). *Anelli* 262 B.R. at 8. Therefore, the use of the *Anelli* test below was proper.

The debtor claims that the application of the *Anelli* test was "overly restrictive" and too similar to the Second Circuit's stringent test set out in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (hereafter "*Brunner* test"). However, the debtor fails to note that there is no binding precedent to follow in the First Circuit. Judge Feeney observed this in her application of the *Anelli* test to Nash's case. "Neither the plain language of § 523(a)(8) nor the First Circuit mandate one particular test." *Mem. of Decision* at 15; App. p. 252 (Tab 22).

The *Brunner* test sets out three elements, each of which the debtor must satisfy:

>1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself or her dependents if forced to repay the loans;
>2) that additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>3) that the debtor has made good faith efforts to repay loans.

*Brunner*, 831 F.2d at 396. Although the *Brunner* test requires fulfilment of all three prongs before a student loan is discharged, the failure to prove one of the relevant factors in the *Anelli* test is not dispositive of the debtor's claim.

The debtor argues that both the *Brunner* test and *Anelli* test fail to comport with Congress's intent to give debtors a fresh start. In advocating this point, Nash asserts that a "true totality of the circumstances" test (hereafter "totality of the circumstances test") is the correct test to apply, and that this test does not evaluate a debtor's good faith effort to repay student loans. The totality of the circumstances test debtor advances considers the following factors:

> 1) the debtor's past, present, and reasonably reliable financial resources;
> 2) the debtor's and her dependents' reasonably necessary living expenses, and;
> 3) relevant circumstances unique to debtor's case that would prevent her from paying her student loans while still maintaining a minimal standard of living even when aided by a discharge of other pre-petition debts.

*In Re Gotay,* 258 B.R. 531, 533 (Bankr. D. Mass. 2001).

It is clear that all three tests look primarily to the same basic factors; namely whether the debtor can repay her loans in light of her special circumstances and past actions. A debtor's good faith effort to repay student loans should be one of the circumstances balanced within the context of the totality of the circumstances test. *See, e.g., In re Faktor*, 306 B.R. 256, 264 (Bankr. N.D. Iowa 2004) ("court[s] might consider a debtor's good faith . . . as one circumstance among the totality of the circumstances. . . ."). Regardless of the test used, Nash failed to prove that she has special circumstances preventing her from repaying her student loans because she did not provide sufficient evidence demonstrating that she lacked the capacity to obtain employment in the foreseeable future.

      B.      <u>The Debtor Waived Her Right To Appeal The Test Used By The Bankruptcy Court In Determining Undue Hardship Pursuant To 11 U.S.C. § 523(a)(8).</u>

In the Bankruptcy Court, the debtor did not argue that the "totality of the circumstances" test should govern, nor did she assert that the *Anelli* test is incorrect. In fact, she cited to *Anelli* with approval in the Joint Pretrial Memorandum. *Joint Pretrial Memorandum* at 6; App. p. 93 (Tab 20). Case law suggests that the debtor has waived arguing the choice of the test used by the Bankruptcy Court. *In re Savage*, 311 B.R. 835, 839 (B.A.P. 1st Cir. 2004) (citing *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F. 3d 265 (1st Cir.1999)). In *Savage*, the creditor on appeal argued the lower court wrongly applied the "totality of the circumstances" test and not the more restrictive *Brunner* test. *Id*. The appellate court held that the creditor waived this argument because he argued the totality of the circumstances test in his trial brief, joint pretrial statement, and at trial. *Id*. Here, Nash argues that the Bankruptcy Court's *Anelli* test closely resembles the more restrictive *Brunner* test, rather than what is in her view the correct totality of the circumstances test. However, in the Joint Pretrial Memorandum debtor specifically cites to *Anelli* for support of her argument that the totality of the circumstances test should be applied. *Joint Pretrial Memorandum* at 6; App. p. 93 (Tab 20). Therefore, the District Court should only review the Bankruptcy Court's application of the *Anelli* test. Allowing the debtor to argue for the less restrictive totality of the circumstances test would result in the issue being addressed for the first time on appeal.

**III.    PLAINTIFF FAILED TO MEET HER BURDEN OF PROVING, BY A PREPONDERANCE OF THE EVIDENCE, THAT SHE IS ENTITLED TO A DISCHARGE OF HER STUDENT LOANS DUE TO UNDUE HARDSHIP.**

Under any test employed by the Court, a debtor has the burden of proving, by a preponderance of the evidence, that her student loans are an undue hardship and should be discharged pursuant to § 523(a)(8). *Anelli*, 262 B.R. at 7. Nash has failed to meet her burden by not providing sufficient evidence showing that she was disabled and unable to find employment in the foreseeable future, and she failed to refute evidence that she had not made a good faith to repay her loans before asking for discharge.

> A.    <u>The Debtor Failed To Produce Any Medical Evidence Of A Long-Term Prognosis Indicating That She Could Not Work In The Foreseeable Future.</u>

The debtor's failure to prove that her disability is likely to persist for a significant portion of the repayment period provides no basis for the assertion that the student loan debt is an undue burden. Although the government takes notice of the debtor's unfortunate situation, no medical evidence indicates that future employment is out of reach. In determining undue hardship, the inability to pay student loans must be long-term and not simply a loss of income. *In re Garrett*, 180 B.R. 358, 363 (Bankr. D.N.H. 1995) (citations omitted).

The debtor has an impressive education, having obtained a bachelor of arts from Dartmouth (*cum laude*), an MBA from Yale, and a juris doctorate from Michigan. This level of accomplishment could indicate at least some possibility of future employment. Although the debtor submitted documentation relating to her medical condition, she did not establish the severity of her condition or her long-term prognosis. At trial, the debtor produced two Temporary Total Disability Deferment Requests signed by Dr. Mallya dated June 6, 2002 and

July 23, 2002. App. 33-35 (Tab 6,7). She also submitted illegible medical documentation from Dr. Rooningstam dated April 27, 2003, portions of which were held inadmissible.[5] This dated medical documentation failed to provide an accurate picture of Nash's future prognosis.

      The Bankruptcy Court never received a prognosis of the debtor's condition from a medical expert. The only assertions concerning Nash's condition were made by her on the witness stand. Although expert testimony is not always needed, credible evidence, not simply bare allegations, should support the debtor's position. *Anelli*, 262 B.R. at 4; *In re Hoskins*, 292 B.R. 883, 888 (Bankr. C.D. Ill. 2003)(citing *Anelli*); *In re Swinney*, 266 B.R. 800, 805 (Bankr. N.D. Ohio 2001). Expert testimony is essential in determining a claimant's psychological disabilities. *Anelli*, 262 B.R. at 9; *In re Kelsey*, 287 B.R. 132, 143 (Bankr. D. Vt. 2001). The two Temporary Total Disability Requests label the debtor's future prognosis as either "unknown" or "undetermined," and do not indicate that her condition will continue indefinitely. Plaintiff's lack of evidence failed to establish that she could not obtain employment in the foreseeable future. Nash's paucity of evidence cannot support a finding that Judge Feeney was erroneous in her conclusion that debtor's student loan debts were not an undue burden.

---

    [5] The inadmissible portions of this evidence were the debtor's only attempt to show her prognosis. As noted above, plaintiff does not challenge Judge Feeney's holding that this evidence was inadmissible, and instead argues that "defendants offered no evidence whatsoever contesting Ms. Nash's disability or her prognosis." *Brief for App.* at 17. Of course, because the burden rests squarely with the debtor, it is irrelevant whether the defendants attempted to refute evidence of a prognosis; in fact, there was no such evidence to refute.

B.  The Debtor Failed To Establish That Repayment Of Student Loans Will Result In Her Inability To Maintain A Minimal Standard Of Living.

The debtor failed to prove that she could not maintain a "minimal" standard of living if forced to repay her student loans. The Bankruptcy Court took a common sense approach to this aspect of the analysis. *In re Roberson*, 999 F.2d at 1135; *Brunner*, 831 F.2d at 396. The Bankruptcy Court held that debtor's $100 monthly entertainment expenses for casino visits could have been allocated towards payment of her student loans. The determination of a debtor's monthly budget is left to the discretion of the bankruptcy court. *In re Pena*, 155 F.3d 1108, 1112 (9th Cir. 1998). Here, the Bankruptcy Court's holding that Nash's casino visits weakened the contention that debtor could not search for employment is reasonable.

Nash did not provide any evidence that her future earnings will be limited to SSDI. Because of her qualifications, it is conceivable that she could be employed at least part- time. Looking only at a debtor's financial condition at the time of trial would result in a distorted picture. Rather, averaging the debtor's income over a reasonable period of time is more appropriate. *Pena*, 155 F.3d at 1112. Simply put, without any evidence describing her long-term prognosis, the court could not find that Nash would be unemployable for the foreseeable future.

     C.     <u>The Debtor Did Not Show That She Made A Good Faith Effort To Repay Her Student Loans.</u>

In this case, the debtor did not offer evidence to refute defendants' various allegations that she did not make a good faith effort to repay her student loans.[6] By taking out student loans, a debtor assumes the obligation to make good faith efforts to repay those loans by working and responsibly managing expenses. *See Roberson*, 999 F.2d at 1135-36. Although the debtor's situation is a difficult one, she has not presented evidence that she lacks the ability to search for employment, participate in repayment programs, or minimize her expenditures.

The debtor's inability to provide an itemized list of student loan payments weakened her argument that she made a good faith effort to repay her student loans. Personal testimony does not replace a proper accounting, and therefore cannot be considered proof that she acted in good faith. The decision to borrow for a college education lies with the debtor, not the taxpayers, and the debtor must accept the consequences of her decision to borrow. *Roberson*, 999 F.2d at 1136. Nash has not provided sufficient evidence demonstrating that she has made good faith efforts to pay off her student loans.

Nash's failure to use any of her "boat winnings" from 2000 to pay off her student loans is further evidence of debtor's lack of good faith. She allocated these winnings towards paying other bills, living expenses, and buying a used car. In analyzing whether the debtor acted in good faith, a court should determine if the debtor willfully or negligently caused her own default. *In re Faish*, 72 F.3d 298, 305 (3d Cir. 1995). Nash's gambling demonstrates a lack of respect for her

---

[6] Although good faith is not always a specific requirement of the totality of the circumstances test, it may be considered as part of the catch-all factor provided for in that test. Further, even if this Court were to find error in the good faith analysis, any such error would be harmless where, as here, the totality of the circumstances supports the lower court's decision.

financial obligations. Finally, debtor's unwillingness to consolidate her loans or engage in vocational training may indicate that the debtor does not want to work towards repaying her educational debt even if her situation were to improve.

## CONCLUSION

Plaintiff failed to provide sufficient evidence that her psychiatric condition would prevent her from earning a living for the foreseeable future. To the extent plaintiff argues any other point, she mischaracterizes the Bankruptcy Court's holding. Plaintiff failed to provide evidence that her medical prognosis was such that she could not be employed in the foreseeable future. Furthermore, she failed to provide evidence that she made a good faith attempt to repay her student loans. The debtor could not have prevailed under any applicable test for undue hardship. For all of the reasons set forth in this Memorandum, the Bankruptcy Court's decision must be affirmed.

Respectfully submitted,

U.S. DEPARTMENT OF EDUCATION

By its attorney,
MICHAEL J. SULLIVAN
United States Attorney

/s/Eugenia M. Carris
Eugenia M. Carris
Assistant U.S. Attorney
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210
Dated: November 30, 2004            (617) 748-3376

## CERTIFICATE OF SERVICE

      I, Eugenia M. Carris, Assistant U.S. Attorney, do hereby certify that on this 30th day of November 2004, I have served a true copy of the BRIEF FOR APPELLEE UNITED STATES DEPARTMENT OF EDUCATION by first-class mail to the following counsel of record:

Evan M. Slavitt, Esq.
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114

Mark F. Weaver, Esq.
Ford & Weaver
10 Pleasant Street, Suite 400
Portsmouth, NH 0381

R. Richard Croce, Esq.
525 Brook Street
P.O. Box 1009
Rocky Hill, CT 06067

                                                /s/Eugenia M. Carris
                                                Eugenia M. Carris
                                                Assistant U.S. Attorney