# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. Statement of the Basis of Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement of the Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Applicable Standard of Appellate Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A. Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B. Statement of Facts Relevant to the Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A. The Bankruptcy Court Applied the Correct Legal Standards in Concluding that Ms. Nash Failed to Prove that Payment of her Student Loans would Impose an Undue Hardship Upon her. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   B. The Bankruptcy Court Properly Concluded that Ms. Nash has not Established that Repayment of her Student Loans would Impose an Undue Hardship Upon her. . . . . . . 4

     1. The Bankruptcy Court properly concluded that Ms. Nash failed to produce any evidence that she is permanently disabled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     2. The Bankruptcy Court properly ruled that Ms. Nash has not made good faith efforts to repay her loans. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     3. Ms. Nash failed to avail herself of social security's vocational rehabilitation programs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     4. Ms. Nash failed to avail herself of the Direct Loan Consolidation Program and its income contingent repayment plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     5. Ms. Nash won $24,500.00 gambling yet failed to pay any of that money to her student loan creditors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     6. Ms. Nash has approximately $10,000.00 in cash. . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

### Statutes

11 U.S.C. §528(a)(8) .................................................... 3, 4

28 U.S.C. §158 .......................................................... 1

Section 108 of the Tax Code (26 U.S.C. §108) ............................. 9

### Cases

Anelli v. Sallie Mae Servicing Corp. (*In re* Anelli) 262 B.R. 1 (Bankr. D. Mass. 2000)... 3, 6, 7

Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987) ... 4

Burkhead v. U.S. (*In re* Burkhead) 304 B.R. 560 (Bankr. D. Mass. 2004). ............ 3, 5, 6

Douglass v. Great Lakes Higher Education Servicing Corp., et al (*In re* Douglass) 237 B.R. 652(Bankr. N.D. Ohio 1999). ........................................................ 9

Jennifer L. Murphy v. CEO/Manager Sallie Mae, et al, 305 B.R. 780 (Bankr. E.D. Va. 2004). ........................................................................ 9

Pennsylvania Higher Education Assistance Agency v. Deborah Helen Birrane, 287 B.R. 490 (B.A.P. 9th Cir. 2002). .................................................................. 9

Renee Stupka v. Great Lakes Ed., et al, 302 B.R. 236 (Bankr. N.D. Ohio 2003). ........... 9

United States Department of Education v. Shireen M. Blair, 301 B.R. 181 (D. Maryland 2003). ........................................................................ 9

### Other Authorities Cited

Federal Rule of Civil Procedure 26. ...................................... 4

Rule 28(i) of the Federal Rules of Appellate Procedure. ................... 1, 2

## I. STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal from the order of the Honorable Joan Feeney, United States Bankruptcy Judge, District of Massachusetts, dated June 18, 2004, pursuant to 28 U.S.C. §158.

## II. STATEMENT OF THE ISSUES PRESENTED

1. Whether the Bankruptcy Court's findings of fact were clearly erroneous.

2. Whether the Bankruptcy Court applied the correct legal standard in concluding that Ms. Nash failed to prove that payments of her student loans would impose an undue hardship upon her.

## III. APPLICABLE STANDARD OF APPELLATE REVIEW

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure CSLF hereby adopts the statement regarding the Applicable Standard of Review set forth in the brief of Appellee, New Hampshire Higher Education Assistance Foundation ("NHHEAF")

## IV. STATEMENT OF THE CASE

### A. SUMMARY

This is an action in which Noreen E. Nash seeks a determination of the dischargeability of student loan obligations owed to Connecticut Student Loan Foundation ("CSLF"), NHHEAF, the United States of America Department of Education ("ED"), Yale University ("Yale") and the University of Michigan[1] ("UM").

---

[1] The University of Michigan was defaulted for its failure to appear at trial. Yale University was defaulted for its failure to plead on February 21, 2003.

1

The case was tried to the U.S. Bankruptcy Court for the District of Massachusetts, Feeney, J. on November 19, 2003 and January 23, 2004. On June 18, 2004 the Bankruptcy Court entered a judgement in favor of the Defendant's ruling that Ms. Nash's student loans were not dischargeable.

At the commencement of the trial on November 19, 2003 Ms. Nash owed student loan obligations in the following amounts to the following parties[2]:

1. United States Department of Education -
   Principal : $72,479.96
   Accrued Interest: $16,206.74

2. Connecticut Student Loan Foundation -
   $38,250.80 with per diem interest of $4.70.

3. New Hampshire Higher Education Assistance Foundation -
   $2,026.52 with per diem interest of $0.31.

### B. STATEMENT OF FACTS RELEVANT TO THE APPEAL

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure CSLF hereby adopts the Statement of Facts set forth in the brief of New Hampshire Higher Education Assistance Foundation ("NHHEAF"), except for the last paragraph which discusses the debt owed to NHHEAF.

## V. ARGUMENT

### A. THE BANKRUPTCY COURT APPLIED THE CORRECT LEGAL STANDARDS IN CONCLUDING THAT MS. NASH FAILED TO PROVE THAT PAYMENT OF HER STUDENT LOANS WOULD IMPOSE AN UNDUE HARDSHIP UPON HER

---

[2] The parties stipulated to the existence and amount of the debts owed to each Defendant and that the proceeds were used for educational benefit.

2

The Court based its decision in this case primarily on two (2) factors. First, the debtor "submitted no evidence of her long term prognosis" (App. p.254) and Second, the Court was "not convinced that [the debtor] has made good faith efforts to repay her educational loans" (App. p.255). Both of these factors fall squarely within the confines of the "Totality of the Circumstances Test".

In her brief Ms. Nash argues that the Court applied the wrong test and that it had improperly used one or more elements of the often cited Brunner[3] test. However, since neither the plain language of §523(a)(8) nor the First Circuit mandate one particular test, this Court was free to any of the "tests" articulated by the Courts which have adopted a test or any combination thereof.

This Court has consistently applied the totality of the circumstances test and has consistently applied it in the same manner it did in this case.

## B. THE BANKRUPTCY COURT PROPERLY CONCLUDED THAT MS. NASH HAS NOT ESTABLISHED THAT REPAYMENT OF HER STUDENT LOANS WOULD IMPOSE AN UNDUE HARDSHIP UPON HER

### 1. The Bankruptcy Court properly concluded that Ms. Nash failed to produce any evidence that she is permanently disabled.

Plaintiff presented no evidence that the condition from which she presently suffers is permanent. *See*, generally, App. pp.100-104. In fact, the portion of the medical records relating to prognosis (App. p. 32, Tab 5) was specifically excluded by the Court for Ms. Nash's failure to comply with F.R.C.P. 26 regarding expert testimony on the grounds that these portions of the report regarding prognosis constituted expert opinion for which the procedure mandated by Rule 26 was not followed. (App. p. 103). Upon objection the Court also disallowed hearsay evidence

---

[3] *See* Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987).

4

of prognosis in the absence of a live witness competent to testify to same. (App. p. 139).[4] By her own admission Ms. Nash was required to demonstrate that she will be disabled indefinitely. *See* Brief of Appellant at p. 15. Yet she failed to produce any evidence that her condition will continue indefinitely. In fact, her testimony leads one to the opposite conclusion. For example: Ms. Nash testified that she hopes to return to work someday. (App. p. 154). She further testified that she has never filed an application to have her loans discharged on the basis of total and permanent disability because, in her opinion, she does not meet the criteria (App. pp. 166-168). Finally, she testified that it is her expectation that she will be earning some money. (App. pp. 192-193).

In her brief Ms. Nash states "the Bankruptcy Court incorrectly held that Ms. Nash introduced no evidence corroborating her statement that she will be unable to work in the future." *See* Appellant's Brief at p. 17 and App. p. 254. In support of this assertion Ms. Nash points to two (2) Temporary Total Disability Deferment Requests, *Id.*. and (App. pp. 33-35, Tabs 6-7), and states that Dr. Gopinath Maliya had certified that Ms. Nash's condition was expected to continue indefinitely. (Appellant's Brief at p. 17). However, these two (2) forms state no such thing. Appendix page 33 states the disabling condition is expected to continue until "undetermined" and Appendix page 34 states the disabling condition is expected to continue until "unknown". Unknown and undetermined are a far cry from indefinite. Neither "unknown" nor "undetermined" give any indication of permanency.

This case very closely resembles the <u>Burkhead</u> case in (304 B.R. 560) which this Court also ruled that a Debtor claiming that payment of her student loan obligations would impose an

---

[4] The specific question and answer objected to were: <u>Question</u>: And how long does that treatment plan call you to stay on the medication? <u>Answer</u>: Indefinitely.

5

undue hardship on her due to various medical conditions had not met her burden of proving her condition was indefinite where she introduced no expert testimony regarding her long term prognosis. In the Burkhead case the Court had before it the debtor's testimony and medical records to review. The medical records indicated that the debtor's condition "could be managed and controlled with regular medication and medical appointments". 304 B.R. 560, 566. In this case the Court had only the debtor's uncorroborated testimony. As set forth above, evidence as to prognosis unaccompanied by a live witness was properly ruled inadmissible. Therefore the Court in this case was left without any evidence as to prognosis. As the Court stated "There was a dearth of evidence on the Debtor's prognosis, the effect of medication on her condition, and her employment prospects. Ms. Nash submitted no evidence of her long-term prognosis". (App. p. 254).

Ms. Nash's brief argues that this debtor's situation is worse than that of the debtor in Anelli v. Sallie Mae (In re Anelli) 262 B.R. 1 (Bankr. D. Mass. 2000) wherein the same Bankruptcy Court "granted a discharge to a debtor facing similar but even less severe circumstances, who also did not present expert testimony". (App. p. 254). However, in the Anelli case "the parties stipulated to the admissibility of exhibits several of which document the Debtor's past and recent health." These exhibits revealed, among other things, the following: "(1) at least one doctor certified that the debtor is totally and permanently disabled… and (2) the prognosis for regaining her health is poor…" See Anelli 262 B.R. at p. 4. At critical difference between this case and Anelli is that here, as recited above, as a result of the Court's ruling as to the inadmissibility of portions of the medical records and its sustaining the objection to hearsay testimony, the Court was left with a record containing no evidence of the debtort's prognosis. In

6

Anelli the parties <u>stipulated</u> to the admissibility of documents containing prognosis evidence. In this case, such evidence was properly precluded.

Ms. Nash claims on page 18 of her brief that the Court's "suggestion that Ms. Nash's condition 'could' improve and that she 'might' be able to earn sufficient income to make some payments is nothing more than wild speculation..." CSLF submits that without evidence as to prognosis it is wild speculation to hold that Ms. Nash will <u>not</u> be able to work in the future. It is Ms. Nash's burden to prove that her condition will continue into the future. She did not meet that burden.

## 2. The Bankruptcy Court properly ruled that Ms. Nash has not made good faith efforts to repay her loans

The Bankruptcy Court properly concluded that Ms. Nash has not made good faith efforts to repay her loans. In support of this conclusion the Bankruptcy Court cited a series of facts which if taken alone might not constitute a lack of good faith but which when taken together compel the conclusion that Ms. Nash has not made good faith efforts to repay her student loans.

## 3. Plaintiff failed to avail herself of social security's vocational rehabilitation programs

At trial Ms. Nash testified that she had read her social security award letter dated January 13, 2002 (App. p. 163) and that she was aware her eligibility for social security must be reviewed every three (3) years. *Id.* She also testified she was aware that social security allows a recipient to work and earn money up to certain dollar limits (App. pp. 163-164). Ms. Nash also testified she probably reviewed that portion of the award letter which offers to assist her in vocational rehabilitation and that she had never contacted any vocational rehabilitation office (App. pp. 164-165). Ms. Nash's counsel characterizes the Court's citing the fact that Ms. Nash has not utilized

7

vocational rehabilitation as evidence of lack of good faith as "outrageous" and bordering on absurd. Defendant CSLF submits that Ms. Nash's failure to take advantage of the program is an important indicator of her lack of good faith. The program is available at no cost and is meant to identify and assist in procuring employment which Ms. Nash could perform based upon her conditions. The most obvious option for her would be some type of job she could perform at home on a schedule of her choosing. She clearly has the intelligence and education to perform many jobs. However, she also has the obligation to attempt to identify and obtain a job suitable for her specific imitations.

### 4. Ms. Nash failed to avail herself of the Direct Loan Consolidation Program and its income contingent repayment plan

The Bankruptcy Court properly concluded that Ms. Nash's failure to apply for the direct loan income contingent repayment plan was indicative of a lack of good faith. The very creation of the income contingent payment program underscores Congress' mandate that student loans, ultimately guaranteed by the government, be repaid. The income contingent repayment program is Congress' way of enabling borrowers, regardless of their economic circumstances, to pay something toward their government funded student loan obligations when they have the ability to. Even Ms. Nash's counsel acknowledges that "it is possible that no payment would be required under the income contingent repayment option based on Ms. Nash's current income". *See* Appellant's Brief p. 25. Ms. Nash's counsel argues that it is not reasonable to view her failure to apply for income contingent repayment as an element of a lack of good faith because after the twenty-five (25) year repayment period under the income contingent repayment option, any remaining balance plus interest is discharged and Ms. Nash would face a tax liability based on forgiveness of debt income. *Id*. However that argument fails to acknowledge that if she had

8

to pay tax on the amount forgiven it would still be for less than the amount she borrowed and if she is insolvent at the time of the forgiveness (the end of the repayment period) she would pay no tax at all pursuant to section 108 of the Tax Code (26 U.S.C. §108). Accordingly, it was correct for the Bankruptcy Court to join the court in Douglass v. Great Lakes Higher Education Servicing Corp., et al (*In re* Douglass) 237 B.R. 652 (Bankr. N.D. Ohio 1999) which held that the debtor's failure to consider the U.S. government's Income Contingent Repayment Plan (ICRP) is a factor in the analysis of whether a debtor has made a good faith effort to repay their loans. *See also* Pennsylvania Higher Education Assistance Agency v. Deborah Helen Birrane, 287 B.R. 490 (B.A.P. 9th Cir. 2002); United States Department of Education v. Shireen M. Blair, 301 B.R. 181 (D. Maryland 2003); Renee Stupka v. Great Lakes Ed., et al, 302 B.R. 236 (Bankr. N.D. Ohio 2003) and Jennifer L. Murphy v. CEO/Manager Sallie Mae, et al, 305 B.R. 780 (Bankr. E.D. Va. 2004).

### 5. Ms. Nash won $24,500.00 gambling yet failed to pay any of that money to her student loan creditors

In 2000 Plaintiff won the sum of $24,500.00 gambling. (App. pp. 169, 212). Ms. Nash testified that she did not use any of that money to pay her student loan creditors. *Id*. Ms. Nash's brief argues that the Bankruptcy Court inappropriately "impose[d] an element of morality into the analysis" [of whether the debtor made a good faith effort to pay her student loans]. The Court did suggest that if Ms. Nash can find the time to gamble she may be able to work at least part time. The fact that Ms. Nash gambles occasionally was not the basis for the Court's conclusion that she had not made a good faith effort to pay, it was the fact that she won $24,500.00 and did not pay one penny toward her student loans. Thus, the Court was not "imposing morality into the analysis" but it did properly hold that a debtor who has a large sum of cash in her hand ought to

9

pay at least some of that money toward her government backed student loan obligations as a show of her good faith effort to pay.

### 6. Ms. Nash has approximately $10,000.00 in cash

Ms. Nash testified that she has approximately $10,000.00 in cash (App. p.197). The Defendant, CSLF, submits that despite those funds being exempt under the Bankruptcy Code, Ms. Nash should not be allowed to maintain such an amount while maintaining that <u>any</u> payment to her student loan creditors would be undue hardship. As it did with her gambling winnings the Court rightfully concluded that despite the exempt status of the retroactive social security payment a debtor seeking a discharge of government backed student loans on the basis of undue hardship who has this large sum of cash on hand ought to pay at least <u>some</u> of it toward those loans as a show of good faith effort to repay. This is particularly true when considered together with Ms. Nash's cash winning of $24,500.00. Taken together these two sums represent $34,500.00 that could have been, but was not, paid to student loan creditors.

## VI. <u>CONCLUSION</u>

**A. THE BANKRUPTCY COURT PROPERLY CONCLUDED THAT MS. NASH HAS NOT ESTABLISHED THAT SHE IS ENTITLED TO A DISCHARGE OF HER STUDENT LOANS PURSUANT TO SECTION 523(a)(8) OF THE BANKRUPTCY CODE FOR THE FOLLOWING REASONS:**

1. Ms. Nash failed to produce any evidence that she is permanently disabled.

2. Ms. Nash has made less than a good faith effort to repay her loans because (i) she has failed to take advantage of social security's vocational rehabilitation programs which would enable her to work more regularly at jobs suitable for her present limitations; (ii) she has failed to take advantage of the Direct Loan Consolidation Program and its income contingent repayment

plan which would set her payment according to her income and (iii) between gambling winnings and money she has in the bank she has been in possession of over $34,000.00, not one penny of which has been paid toward her student loans. These facts, which Ms. Nash does not even argue are clearly erroneous, preclude this debtor from a discharge of her student loans under <u>any</u> of the various tests promulgated by the Bankruptcy and Circuit Courts across the country. The Bankruptcy Court in this case was not constrained by any one "test" but has consistently applied the "totality of the circumstances" test which it properly did in this case. Accordingly, the Court should affirm the judgment of non-dischargeability entered by the Bankruptcy Court.

DEFENDANT/APPELLEE,
CONNECTICUT STUDENT
LOAN FOUNDATION

By _____
R. Richard Croce, Esq.
Its Attorney
Federal Bar Code: Ct-07834
525 Brook Street
P.O. Box 1009
Rocky Hill, CT 06067
Tel. No.: (860) 257-4001, Ext. 224

11

## CERTIFICATION OF SERVICE

The undersigned certifies that on November 29, 2004 a copy of Appellee's, Connecticut Student Loan Foundation, Brief was served on the following via first class mail, postage pre-paid:

**Plaintiff's Attorney**
Evan Slavitt, Esq.
Bodoff & Slavitt, LLP
225 Friend Street
Boston, MA 02114-1812

**Defendant**
Mark F. Weaver, Esq.
Ford & Weaver, P.A.
10 Pleasant Street
Suite 400
Portsmouth, NH 03801-3456

**Defendant**
Eugenia M. Carris, Esq.
United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210

_____
R. Richard Croce, Esq