UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11745-GAO

NOREEN E. NASH,
Appellant,

v.

CONNECTICUT STUDENT LOAN FOUNDATION,
NEW HAMPSHIRE HIGHER EDUCATION ASSISTANCE FOUNDATION,
and UNITED STATES DEPARTMENT OF EDUCATION,
Appellees.

OPINION
August 17, 2005

O'TOOLE, D.J.

The appellant, Noreen E. Nash, is a highly educated woman who has suffered since the mid-to-late 1990s from psychiatric disorders. She has been diagnosed as suffering from bipolar disorder, and began weekly treatment for that disorder in 2001. As a result of her illness, she has been unable to sustain steady employment, not only in fields for which she is highly trained, but even in positions requiring less specialized education. The Social Security Administration has determined that she is temporarily disabled, and she is receiving SSDI benefits.

In 2002, she filed a Chapter 7 bankruptcy petition. She listed unsecured debts amounting to $231,371.34, substantially more than half of which were debts arising from education loans. In an adversary proceeding before the bankruptcy court, Nash sought to have those education debts discharged. Pursuant to 11 U.S.C. § 523(a)(8), debts arising from education loans are ordinarily not dischargeable unless excepting them from discharge will impose an undue hardship

on the debtor. After trial, the bankruptcy court found that Nash had not established the requisite "undue hardship" and concluded that the debts were nondischargeable.

Nash has appealed. The issues on appeal are essentially two: whether the bankruptcy judge employed the wrong legal standard in assessing whether Nash had shown "undue hardship," and whether the judge erred in finding, on the evidence at the trial, that Nash had not proved that excepting the loans from discharge would impose an undue hardship on her. The first, a legal issue, is to be reviewed de novo. The second calls for evaluation of the soundness of the bankruptcy judge's fact-finding under a standard of "clear error" review. See TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995).

I. The Legal Standard

The Bankruptcy Code generally permits the discharge of debts in order to give a bankrupt debtor a "fresh start." Gannett v. Carp (In re Carp), 340 F.3d 15, 25 (1st Cir. 2003). Nonetheless, the Code excepts certain debts from discharge. In particular, § 523(a)(8) of the Code excepts from discharge any debt "for an educational . . . loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend." It has been observed that excepting education debt from discharge furthers two goals: (1) preventing student loan debtors from abusing the system by reaping the windfall of a free education and (2) protecting the solvency of the student loan system. Cazenovia Coll. v. Renshaw (In re Renshaw), 222 F.3d 82, 86-87 (2d Cir. 2000).

However, § 523(a)(8) includes a kind of "safety valve." The education debt may be discharged if not doing so would impose an "undue hardship" on the debtor. In effect, the "undue hardship" proviso permits an equitable suspension of the rule of nondischargeability on a case-by-case basis.

There is no elaboration in the statute as to how one might judge when a case of "undue hardship" has been made out by a debtor. One possible conclusion about the absence of guidance is that Congress intended the phrase to be broad enough to encompass the myriad of unforeseen circumstances that may be encountered in the administration of the bankruptcy system and thought it best to leave the matter to the prudent discretion of bankruptcy judges who would apply the phrases in concrete instances. In other words, it is far from implausible to think that Congress purposely chose not to define the term more precisely.

Perhaps concerned that "undue hardship," without further definition, is too uncertain a standard that carries a risk of uneven interpretation and application, and perhaps anxious that decisions about the standard be perceived to be rational and not random, courts have tried to formulate ways of supplying the elaboration that Congress had omitted. Drummed into the minds of future judges from their first days of law school is the postulate that correct legal reasoning is fundamentally a matter of selecting and applying the right "test" (outfitted, typically, with serviceable "prongs"). Accordingly, courts have employed their test-making skills in an effort to provide a rubric for determining when "undue hardship" should be recognized, and when not. In Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987), a relatively brief per curiam opinion, the Second Circuit proposed a three-part test for discerning

"undue hardship." To prove "undue hardship" under the so-called Brunner test, a debtor seeking to discharge education loans must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 396. Whether out of conviction or convenience, most of the other circuits have subsequently decided to employ the Brunner test. See, e.g., Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382, 385 (6th Cir. 2005); Educ. Credit Mgmt. Corp. v. Polleys, 356 F.3d 1302, 1309 (10th Cir. 2004); Hemar Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003); United Student Aid Funds v. Pena (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998); Pennsylvania Higher Educ. Assistance Corp. v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995); In re Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993).[1]

But not all. The Eighth Circuit has notably demurred:

> We are convinced that requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in § 523(a)(8)(B). Therefore, we continue . . . to embrace a totality-of-the-circumstances approach to the "undue hardship" inquiry. We believe that fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.

Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003) (citations omitted). Having staked out this sensibly flexible position that respects the broad

---

[1] The First Circuit has not directly addressed the issue, nor has the Supreme Court, and it remains an open question in this Circuit.

nature of the statutory language, the court then backslid a bit and gave into that irresistible urge to create a test:

> In evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation – including assets, expenses, and earnings – along with the prospect of future changes – positive or adverse – in the debtor's financial position.

Id. at 554-55. The third element, which encompasses the former two, is the essence of the "test": the judge should consider all the relevant facts and circumstances of the particular case. Now there's an idea.

A "totality-of-the-circumstances test" is really not a "test" at all, but simply an adjuration to the decision-maker to make an honest and intelligent judgment after having given due consideration to all of the information the parties have provided about the problem to be resolved. That is the default standard for all judging. The alternative is to say that the assessment of "undue hardship" should be made on something less than all the circumstances, and necessarily the next step is to prescribe, for cases generally, what matters and what does not.

In enacting § 523(a)(8), Congress could have done that prescribing. For instance, without adding appreciably to the length of the Bankruptcy Code, it could have incorporated the Brunner test itself in the statute. Instead, however, Congress chose a very broad phrase. It is a fair inference that in doing so, Congress intended the phrase to stay broad, giving bankruptcy judges the authority and the responsibility to decide, case-by-case, whether the particular circumstances

of the debtor warranted relief from the bar to discharge of education debt. If one must express the proposition in terms of a "test," then the "test" most appropriate to the proper exercise of that authority and responsibility is the "totality-of-the-circumstances test."

Two additional observations are in order. First, flexibility does not necessarily mean lenity. Permitting a bankruptcy judge to decide whether "undue hardship" has been made out on the basis of all the pertinent circumstances does not mean that the bar has to be set low. The Brunner court took note of the "clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." 831 F.2d at 396. A judge exercising flexible discretion to take into account the full and peculiar facts of a given case without the aid of a prescriptive (and perhaps restrictive) "test" can still be faithful to that congressional purpose.

Second, there is the persistent problem of the Chancellor's foot. Flexibility promiscuously employed can undermine consistency and predictability, and ultimately fairness. Yet that is a problem endemic to any discretionary authority to suspend the operation of otherwise applicable rules. After all, the occasion for making an equitable exception only arises when in the particular case at hand application of the usual rule tends to work an unusual injustice. The project of equity is the making of exceptions to usual rules. The more equitable judgment is hemmed in by rules, the less equitable it becomes. Appropriate precaution against abuse is not always to limit the discretion to make such equitable adjustments, but may rather be simply to insist on an explanation of the decision that is forthright, complete and – in the literal sense – respectable.

In this case, the bankruptcy judge eschewed the more prescriptive Brunner test in favor of a more flexible totality-of-the-circumstances test. Although she did not resist the temptation

to articulate her own four "factors," following an approach she had taken in earlier cases, see Burkhead v. United States (In re Burkhead), 304 B.R. 560 (Bankr. D. Mass. 2004); Anelli v. Sallie Mae Servicing Corp. (In re Anelli), 262 B.R. 1 (Bankr. D. Mass. 2000), as a functional matter it is evident that what she did was to evaluate the evidence before her in a methodical and thorough way to see if Nash had satisfactorily established that her case was exceptional enough to warrant suspension of the usual rule of nondischargeability for her student loans. The judge carefully explained her reasoning. That was proper employment of a "totality-of-the-circumstances" test, which is another way of saying it was proper judging.

II. The Substantive Ruling

Section 523(a)(8) makes an exception to the general rule of dischargeability for education loans. The "undue hardship" proviso is an exception to the exception. Bankruptcy courts have consistently ruled that the burden of proof rests with the party seeking to establish that an "undue hardship" would result if the education debt were not discharged. See Burkhead, 304 B.R. at 564; Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132, 143 (Bankr. D. Vt. 2001); Kopf v. U.S. Dep't of Educ. (In re Kopf), 245 B.R. 731, 734 (Bankr. D. Me. 2000).

At bottom, the bankruptcy judge found that Nash had not carried her burden of proof. In particular, the judge found that Nash had not shown that her disability was likely to continue for such a period of time that she could not reasonably be expected to repay the education loans in the future. She found further that Nash had not demonstrated good faith in trying to pay down the debt in the past.[2]

---

[2] The judge identified the question of the debtor's good faith in attempting to pay down the loans as a factor in her "totality-of-the-circumstances test." (It is a factor in the "Brunner test" as well.) Whether it is identified as a "prong" of an applicable "test" or not, it is at the very least a

As to the first issue, the judge was troubled by the absence of any reliable prognosis about Nash's psychiatric disorder from medical personnel. Nash was the only witness at the trial; none of her treating practitioners was presented. The medical records offered in evidence by Nash were skimpy and obscure.[3]

To be sure, there was evidence that would have supported a conclusion that Nash's disorder was likely long-term. For one thing, it had already persisted for some years. Her entitlement of SSDI benefits spoke to the genuineness of a continuing disability. Nonetheless, the judge was justified in being unpersuaded in the absence of evidence which met the question of prognosis head-on. As the judge put it,

> The Debtor failed to present sufficient evidence that she will never have the ability to repay these student loans. She presented no expert testimony. She presented no evidence as to her prospects for generating income following a continued course of medical treatment.

App. at 256.

It is not enough to show that the judge might justifiably have found in Nash's favor on the evidence. So long as the judge's view was reasonably supported by the evidence (or its lack), there was no clear error. McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 329 (1st Cir. 2004); Carp, 340 F.3d at 21-22. See also Dedham Water Co. v. Cumberland Farms Dairy, 972 F.2d 453, 462 (1st Cir.1992) ("When the evidence supports conflicting inferences, the [court's] choice from among the several inferences cannot be clearly erroneous."). Moreover, in reviewing

---

"circumstance" that may be taken account of in deciding whether, under all the circumstances, the debtor should have the benefit of the "undue hardship" exception to nondischargeability.

[3] On objection, the judge excluded a portion of one record that would have provided at least a summary prognosis. Nash has not appealed the evidentiary ruling.

8

a bankruptcy judge's fact-finding, due regard must be given to the opportunity the judge had to judge the credibility of the witness. McMullen, 386 F.3d at 329; Carp, 340 F.3d at 25.

Likewise, the judge's finding that Nash had not made a good faith attempt to repay the loans was not clearly erroneous. Again, there was a potential in the evidence for competing inferences. In Nash's favor was evidence about her past financial struggles, from which it might have been inferred that it was practically impossible for her to have made payments against the education loans. On the other side was evidence that when resources were available, as they were from time to time, she did not apply them against the education debt, though she did pay down other debts. And there was the doubt about the prudence of Nash's stewardship of her meager resources raised by the evidence of her persistent, even if generally modest, trips to gambling casinos.

The judge's conclusion that Nash had failed to carry her burden of proof as to the probability of "undue hardship" was not clearly erroneous.

III. Conclusion

After careful review of the record of the trial in the bankruptcy court, no error appears either in the choice of the legal standard nor in the findings on the evidence. The decision of the bankruptcy court is therefore AFFIRMED.

| | |
|---|---|
| August 17, 2005 | \s\ George A. O'Toole, Jr. |
| DATE | DISTRICT JUDGE |

9